Matt Adams (WA 28287)*
Aaron Korthuis (WA 53974)*
Margot Adams (WA 56573)*
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

Bernardo Merino (CA 225593)
Law Office of Bernardo Merino
233 Sansome Street, Suite 706
San Francisco, CA 94104
(415) 391-3001

*Pro hac vice motions forthcoming

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALDORA REIS; MANUEL DE SOUSA REIS,<br><br>Plaintiff-Petitioners,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; TRACY RENAUD, Senior Official Performing the Duties of the Director, USCIS; JOHN KRAMAR, District Director, USCIS; JAMES T. WYROUGH, Field Office Director, San Jose, USCIS; ALEJANDRO MAYORKAS, Secretary of the United States Department of Homeland Security; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant-Respondents. | **COMPLAINT AND PETITION FOR REVIEW OF DENIAL OF APPLICATION FOR NATURALIZATION PURSUANT TO 8 U.S.C. § 1421(c)** |

**INTRODUCTION**

1.      Plaintiffs-Petitioners Aldora Reis (Ms. Reis) and Manuel De Sousa Reis (Mr. Reis) (collectively, Plaintiffs) are longtime lawful permanent residents of this country who have sought to become citizens of the United States. Pursuant to section 310(c) of the Immigration and Nationality Act, 8 U.S.C. § 1421(c), Mr. and Ms. Reis submit this complaint and petition, seeking de novo judicial review of the denial of their applications for naturalization.

2.      Mr. and Ms. Reis have been lawful permanent residents (LPRs) of this country since 2013 and 2014, respectively. They adjusted status after their son, a U.S. citizen, filed an immigrant visa petition on their behalf. Prior to becoming LPRs, Mr. and Ms. Reis lived in the United States for decades.

3.      In 2020, Mr. and Ms. Reis filed applications to become U.S. citizens, as their status as LPRs entitles them to do. Nevertheless, United States and Citizenship Immigration Services (USCIS) denied their applications, concluding that they were ineligible to adjust status back in 2013 and 2014. According to USCIS, Ms. and Mr. Reis were inadmissible pursuant to 8 U.S.C. § 1182(a)(9)(B) when they adjusted status because they had overstayed a visa after entering the United States in 1989, acquired more than a year of unlawful presence, departed the country, and then reentered before the passage of ten years.

4.      Under the Immigration and Nationality Act (INA), a noncitizen is rendered inadmissible for ten years—and therefore cannot apply to adjust status absent a waiver—if they are unlawfully present for more than a year and depart or are removed from the United States. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II). Plaintiffs did not qualify for a waiver and thus were forced to wait ten years after their last departure before applying for adjustment of status, which they did.

5.      Defendants now assert that a noncitizen must wait the entirety of this ten years outside of the United States. For that reason, even though USCIS previously found that Mr. and

Ms. Reis were eligible and approved their applications for adjustment of status, the agency has now adopted an alternative interpretation and denied their naturalization applications, concluding they should have never become LPRs in the first instance.

6.     USCIS's latest and more restrictive interpretation of the INA defies the statute's plain language. Nowhere does the statute require that a noncitizen wait ten years outside of the country to become admissible once again. While other, related inadmissibility provisions *do* require that an individual remain outside the United States, the statutory provision at issue in this case conspicuously does *not* do so. Indeed, as noted, in the past USCIS has interpreted the statute to recognize that it does not require the applicant to remain outside of the United States during the ten-year period. Moreover, other federal agencies, including the Board of Immigration Appeals, recognize this fact, and have concluded that a noncitizen may reside in the United States while waiting out the time period imposed by the ten-year bar.

7.     Despite the complete absence of statutory language requiring that Plaintiffs pass the ten-year period outside the United States, USCIS denied their naturalization applications. That denial violates the plain language of the INA, is not in accordance with law, and is arbitrary and capricious.

8.     Even if USCIS were permitted to now adopt this new restrictive interpretation requiring applicants to remain outside the United States during the ten-year period, it would be unlawful to retroactively apply it to Mr. and Ms. Reis and other applicants who have already applied for adjustment of status and been approved.

9.     Accordingly, Plaintiffs ask that the Court exercise its jurisdiction to review the denial of their naturalization applications de novo, correct USCIS's legal error, and grant their applications to naturalize and become U.S. citizens.

**JURISDICTION AND VENUE**

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction); 8 U.S.C. § 1421(c) (jurisdiction to review denials of applications for naturalization); and 5 U.S.C. § 701, the Administrative Procedure Act.

11.     Venue is proper in the Northern District of California pursuant to 8 U.S.C. § 1421(c) because Plaintiffs reside within this district. In addition, the administrative decision denying Plaintiffs' applications for naturalization was issued by the San Jose Office of USCIS, which is located within this district.

**INTRADISTRICT ASSIGNMENT**

12.     The claims of Plaintiffs arise in the county of Santa Clara, in the city of San Jose. Assignment to the San Jose Division of this Court is proper under N.D. Local Rule 3-2(e).

**PARTIES**

13.     Plaintiff-Petitioner Aldora Reis is a lawful permanent resident of the United States. She is a citizen of Portugal and is married to Plaintiff-Petitioner Manuel De Sousa Reis. She obtained status as a lawful permanent resident on April 18, 2014, based on a family visa petition filed by her son, Danny Reis, who is a United States citizen. She resides in San Jose, California.

14.     Plaintiff-Petitioner Manuel De Sousa Reis is a lawful permanent resident of the United States and a citizen of Portugal. He is married to Plaintiff-Petitioner Aldora Reis. He obtained status as a lawful permanent resident on May 13, 2013, based on a family visa petition filed by his son, Danny Reis, who is a United States citizen. He resides in San Jose, California.

15.     Defendant-Respondent U.S. Citizenship and Immigration Services (USCIS) is a component of the U.S. Department of Homeland Security (DHS), 6 U.S.C. § 271(a)(1), and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is the agency responsible for implementing the provisions of the Immigration and Nationality Act, and in particular 8 U.S.C. §

1421, et seq., the provisions under which permanent residents can be naturalized and become U.S. citizens.

16.     Defendant-Respondent Tracy Renaud is the Senior Official Performing the Duties of the Director of USCIS. Ms. Renaud is responsible for processing and determining applications for naturalization in accordance with the laws and lawfully promulgated regulations of the United States. She is sued in her official capacity.

17.     Defendant-Respondent John W. Kramar is the Director of District 21 of USCIS. Mr. Kramar is responsible for processing and determining applications for naturalization in accordance with the laws for all applicants residing in District 21, which includes all of the Northern District of California. He is sued in his official capacity.

18.     Defendant-Respondent James T. Wyrough is the Field Office Director of the San Jose Office of USCIS. Mr. Wyrough is responsible for processing and determining applications for naturalization in accordance with the laws for all applicants residing within the San Jose Field Office. He is sued in his official capacity.

19.     Defendant-Respondent Alejandro Mayorkas is the Secretary of the U.S. Department of Homeland Security. He is ultimately responsible for administering United States immigration and naturalization laws and regulations, including the laws and regulations governing the naturalization process. He is sued in his official capacity.

20.     Defendant-Respondent U.S. Department of Homeland Security (DHS) is an executive agency of the United States and an "agency" within the meaning of the APA. 5 U.S.C. § 551(1). DHS is the federal parent agency of USCIS and the agency responsible for the administration and enforcement of the country's immigration and naturalization laws.

1

**LEGAL BACKGROUND**

2          21.     This case concerns both Mr. and Ms. Reis's previously approved applications for

3     adjustment of status to become lawful permanent residents and their current applications for

4     naturalization. As detailed below, Defendants claim that USCIS previously erred when it approved

5     Mr. and Ms. Reis's applications for adjustment of status. According to USCIS, as a result, Mr. and

6     Ms. Reis are now ineligible to naturalize.

7          22.     Noncitizens present in the United States may apply for legal permanent residency

8     based on certain family and employment-based categories. 8 U.S.C. §§ 1153, 1154, 1255. A

9     process known as adjustment of status allows applicants to apply to obtain permanent residence

10    while remaining in the United States, instead of requiring them to first return to their home

11    countries and apply for immigrant visas from a U.S. embassy or consulate abroad. *See* 8 U.S.C. §

12    1255(a).

13         23.     Among other requirements, an applicant seeking to adjust status and become a

14    lawful permanent resident must be "admissible to the United States for permanent residence."

15    8 U.S.C. § 1255(a).

16         24.     The INA lists the grounds of inadmissibility that might apply to an adjustment of

17    status applicant at 8 U.S.C. § 1182. Some of the applicable grounds of inadmissibility are found in

18    § 1182(a)(9), which render a noncitizen inadmissible based on (1) prior unlawful presence in the

19    United States and (2) a prior departure or removal from the country.

20         25.     Unlawful presence in the United States generally occurs in one of two ways. First, a

21    noncitizen accrues unlawful presence if the noncitizen is present in the United States without being

22    admitted or paroled. 8 U.S.C. § 1182(a)(9)(B)(ii). Second, a noncitizen who was inspected or

23    paroled accrues unlawful presence after the expiration of the period of authorized stay. *Id.* For

24

example, the latter case might occur if a noncitizen is admitted as a visitor for 90 days and then remains in the country past 90 days.

26.     As relevant here, under § 1182(a)(9)(B), a noncitizen can be subject to what are known as the three-year and ten-year unlawful presence bars on admissibility. The three-year bar on admissibility applies when a noncitizen is unlawfully present in the United States "more than 180 days but less than 1 year" and subsequently departs the United States. 8 U.S.C. § 1182(a)(9)(B)(i)(I). The ten-year bar on admissibility applies when a noncitizen has been unlawfully present "one year or more" and thereafter departs the United States. *Id.* § 1182(a)(9)(B)(i)(II).

27.     A waiver is available to some applicants who seek to apply for admission *prior* to the expiration of the three- or ten-year bars. Qualifying individuals include those who are the spouse, son or daughter of a U.S. citizen or lawful permanent resident who can demonstrate that "refusal of admission to such immigrant [noncitizen] would result in extreme hardship to the citizen or lawfully resident spouse or parent of such [noncitizen]." 8 U.S.C. § 1182(a)(9)(B)(v).

28.     Mr. and Ms. Reis did not qualify for such waiver, as a U.S. citizen child is not listed in the statute as a qualifying relative for the waiver. Instead, they were forced to wait for the ten-year period to elapse before applying for admission as lawful permanent residents.

29.     Significantly, the INA does not state that a noncitizen must remain *outside* of the United States during the three- or ten-year time period before applying again for admission. Rather, it simply indicates that such individuals are inadmissible during that respective time-period (unless they obtain a waiver).

30.     However, despite initially finding them eligible and approving their applications for adjustment of status, USCIS has now taken the position that Mr. and Ms. Reis were inadmissible at

the time they were approved because the ten-year period did not run after they reentered and remained in the United States.

31.     Notably, while the waiver to the three- and ten-year bars at 8 U.S.C. § 1182(a)(9)(B)(v) contains no requirement that the person remain outside of the country while applying for a waiver, neighboring, similar bars on admissibility lay out such an explicit requirement. Those subsections specify that an application for the waiver should be sought *prior to reentering* the United States. For example, under subsection (a)(9)(A), which directly precedes the inadmissibility bar at issue here, the INA imposes five-, ten-, and twenty-year bars on admissibility based on the type of removal order a noncitizen receives. A noncitizen facing such an admissibility bar may only enter the United States during the penalty period if they are granted consent "*prior to the date* of the [noncitizen's] reembarkation at a place *outside* the United States or attempt to be admitted *from foreign contiguous territory*." 8 U.S.C. § 1182(a)(9)(A)(iii) (emphasis added).

32.     Similar language also exists for the waiver to the inadmissibility ground at 8 U.S.C. § 1182(a)(9)(C). That bar, commonly known as the "permanent bar," renders a noncitizen permanently inadmissible if the person (1) was unlawfully present for a year or more or who has been ordered removed, and who (2) reenters or attempts to reenter the United States without being admitted. 8 U.S.C. § 1182(a)(9)(C). Like § 1182(a)(9)(A), a noncitizen can nonetheless qualify for an exception (albeit, only after ten years have elapsed) if they obtain consent to reenter "*prior to* the [noncitizen's] reembarkation at a place *outside* the United States or attempt to be readmitted *from a foreign contiguous territory*." *Id.* § 1182(a)(9)(C)(ii) (emphasis added).

33.     The statutory restrictions noted above—and their absence from § 1182(a)(9)(B)(v)—demonstrate that the three- and ten-year bars contain no requirement that a noncitizen subject to these bars remain outside the United States for the relevant period. As the Supreme Court has explained, "where Congress includes particular language in one section of a

statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009) (alteration and citation omitted). Here—where the key statutory provision omits language included in the two subsections it is directly placed between—that rule applies with particular force.

34.     In light of these key features of the statute's text, at least two district courts have already rejected USCIS's assertion that a noncitizen subject to a bar at § 1182(a)(9)(B) must spend the time for that bar outside the United States. *See Neto v. Thompson*, No. Civ. No. 20-00618 (KM) (JBC), --- F. Supp. 3d ---, 2020 WL 7310636 (D.N.J. Dec. 10, 2020); *Kanai v. U.S. Dep't of Homeland Sec.*, No. 2:20-cv-05345-CBM-(KSx), 2020 WL 6162805 (C.D. Cal. Aug. 20, 2020).

35.     The Board of Immigration Appeals (the Board) has also agreed that a noncitizen facing a three- or ten-year bar need not spend that time outside the United States. Because the Board has jurisdiction over the adjustment applications of many noncitizens in removal proceedings, it has previously addressed this question. In doing so, the Board has reasoned that "there is nothing in the [INA] to indicate that the 10-year period between the time of removal and the time of seeking admission need be spent outside the United States." *Matter of Rodriguez-Rivera* (BIA July 11, 2014) (Ex. A). Concluding otherwise would "transform the ground[s] of inadmissibility at section 212(a)(9)(B)[] into [] *permanent* ground[s] of inadmissibility," since someone present in the United States before the expiration of the bar could never again become admissible. *Matter of Armando Cruz* (BIA Apr. 9, 2014) (Ex. B); *see also Matter of Rodriguez Rivera*, Ex. A at 2–3 (similar); *Matter of Tapia Cervantes* (BIA Dec. 21, 2018) (Ex. C) (similar). Such a permanent bar would defy Congress's intent, as § 1182(a)(9)(B) provides only for "the temporary inadmissibility of [noncitizens] who have been unlawfully present in the United States for certain continuous periods." *Matter of Rodarte*, 23 I. & N. Dec. 905, 909 (BIA 2006).

36. Notably, USCIS now seeks to adopt an interpretation that is inconsistent with previous agency decisions and guidance. USCIS's Administrative Appeals Office (AAO) has previously concluded that noncitizens may adjust status even where the period for the three-year bar passed while the noncitizen was in the United States. *See In re Salles-Vaz* (AAO Feb. 22, 2005) (Ex. D). Moreover, in prior letters to immigration practitioners, USCIS chief counsels have similarly agreed that the three- or ten-year bars "continue[] to run even if the [noncitizen] is paroled into the United States or is lawfully admitted as a nonimmigrant." Letter from Lynden Melmed, Chief Counsel, USCIS, to Daniel C. Horne (Jan. 26, 2009) (Ex. E); *see also* Letter from Robert Divine, Chief Counsel, USCIS, to David P. Berry (July 14, 2006) (Ex. F).

37. Most noncitizens who become lawful permanent residents become eligible to naturalize as a U.S. citizen after 5 years as an LPR. *See* 8 U.S.C. § 1427(a).

38. An applicant for naturalization whose application is denied, including because their adjustment of status application was allegedly granted in error, may challenge that decision in federal court. *See* 8 U.S.C. § 1421(c). Such review is conducted "de novo." *Id.*

## FACTUAL BACKGROUND

39. Plaintiff-Petitioner Aldora Reis was born in Norte Pequeno, Portugal on July 27, 1965, and Plaintiff-Petitioner Manuel De Sousa Reis was born in Ourem, Portugal on May 31, 1962. They were married on January 21, 1984, in Portugal, where their first child, Silvia, was born in 1985.

40. On October 5, 1989, Mr. and Ms. Reis traveled together to the United States on B-2 nonimmigrant visitor visas. Ms. Reis's visitor visa was valid until March 4, 1990. Mr. Reis no longer has documentation indicating when his B-2 visa expired.

41. On May 8, 1991, Ms. Reis gave birth to their second child, Danny, who is a U.S. citizen.

42.     The couple did not leave the United States again until June 2000.

43.     After leaving the United States in June 2000, Mr. and Ms. Reis returned on August 30, 2000. They were admitted and inspected via the Visa Waiver Program. More than a decade later, the couple applied to be admitted as lawful permanent residents by applying for adjustment of status, filing Form I-485, Application to Register Permanent Residence or Adjust Status with USCIS. Mr. Reis applied in 2012, while Ms. Reis applied in 2013.

44.     USCIS granted both applications. Mr. Reis became a LPR on May 13, 2013, while Ms. Reis was granted LPR status on April 18, 2014.

45.     After several years as legal permanent residents, on February 22, 2019, Mr. and Ms. Reis separately submitted to USCIS form N-400, Application for Naturalization. Despite the fact that USCIS had previously granted the couple LPR status, USCIS denied both applications for naturalization on May 8, 2020.

46.     USCIS denied Plaintiffs' applications by claiming that Mr. and Ms. Reis failed to fulfill the requirement of having been lawfully admitted for permanent residence. The agency stated in its denial notices that it had originally erred in granting the couple LPR status in 2013 and 2014 because it *now* believed they had been inadmissible under 8 U.S.C. § 1182(a)(9)(B)(i)(II) at the time they applied to adjust status. Specifically, USCIS reasoned that both individuals had been inadmissible in 2013 and 2014 for having previously departed after having been unlawfully present in the United States for one year or more.

47.     USCIS determined that because Mr. and Ms. Reis overstayed their B-2 visitor visas issued in 1989 and accrued unlawful presence in the U.S. in excess of one year, the ten-year bar to admission was triggered by their departure from the U.S. in June 2000. Moreover, contrary to when USCIS first approved their applications for adjustment of status, USCIS reinterpreted 8 U.S.C. § 1182(a)(9)(B)(i)(II) to find that it required that they remain outside of the United States

before applying for admission. Thus, despite the fact that Mr. and Ms. Reis applied for LPR status over ten years after their June 2000 departure, USCIS maintained that the ten-year bar rendered them inadmissible at the time they were previously approved for admission and adjustment of status. Accordingly, USCIS concluded that Mr. Reis and Ms. Reis are now ineligible for naturalization and denied their applications.

48.    In response, pursuant to 8 C.F.R. § 336.2(a), Mr. and Ms. Reis separately requested a hearing on the denial of their applications for naturalization by filing a request with USCIS on June 5, 2020. They did so using form N-336, Request for a Hearing on Decision in Naturalization Proceedings. In their requests, Mr. and Ms. Reis asserted that USCIS erroneously concluded that the ten-year bar applied at the time they sought admission through adjustment of status.

49.    On January 4, 2021, USCIS denied Mr. and Ms. Reis's requests. In doing so, USCIS relied on statutory language in a separate provision of the INA, 8 U.S.C. § 1182(a)(9)(A). According to USCIS, because *that* provision can be interpreted to require a person who has been removed to wait outside of the United States during the relevant statutory period before again seeking admission, § 1182(a)(9)(B)(i) should be interpreted to require the same.

50.    USCIS failed to acknowledge 8 U.S.C. § 1182(a)(9)(A)(iii) contains explicit language requiring that any exception to that bar be applied for "prior to the date of the [noncitizen's] reembarkation at a place outside the United States or attempt to be admitted from foreign contiguous territory," while in contrast, the waiver for § 1182(a)(9)(B) contains no such language.

51.    USCIS concluded that because Mr. and Ms. Reis had failed to spend the ten-year statutory period outside of the U.S., they remained subject to the bar at the time they applied for adjustment of status. As result, according to USCIS, they did not acquire the necessary five years of lawful permanent residence. Accordingly, USCIS reaffirmed its decision to deny Mr. and Ms.

COMPL. & PET. FOR REVIEW OF DENIAL OF
NATURALIZATION APPLICATION - 11

1  Reis's naturalization applications.

2      52.     Pursuant to 8 U.S.C. § 1421(c), Mr. and Ms. Reis now have the right to obtain de

3  novo judicial review of USCIS's denial of their applications for naturalization.

4      53.     They request such a review because USCIS's decision is legally erroneous and

5  unlawful. USCIS's wrongful denial of their applications for naturalization has deprived them of

6  fundamental rights, including the right to vote, to serve on a jury, to receive loans and benefits

7  reserved for citizens (including positions and professions to the benefit of the country), or to travel

8  and remain abroad without fear of exclusion.

9                              **CAUSES OF ACTION**

10                                 **COUNT I**
                **Petition for Review of Denial of Naturalization Application**
11                              **8 U.S.C. § 1421(c)**
                    **(Unlawful Denial of Naturalization Application)**
12

13     54.     All the foregoing allegations are repeated and realleged as though fully set forth

14  herein.

15     55.     Defendants unlawfully denied the naturalization applications of Mr. and Ms. Reis

16  by reinterpreting the statute in a more restrictive manner than when their applications for

17  adjustment of status were first approved. Defendants now conclude that Mr. and Ms. Reis were

18  originally inadmissible at the time they adjusted status.

19     56.     Contrary to USCIS's most recent interpretation of 8 U.S.C. § 1182(a)(9)(B), the

20  ten-year unlawful presence bar did not render them inadmissible at time of adjustment of status. As

21  a result, they lawfully adjusted status as permanent residents and no barrier exists to their

22  applications to naturalize as U.S. citizens.

23

24

1

2

**COUNT II**
**Violation of Administrative Procedure Act**
**5 U.S.C. 706(2)(A)**
**(Agency Action Not in Accordance with Law)**

3

4

57.     All the foregoing allegations are repeated and realleged as though fully set forth

herein.

5

6

7

58.     As explained above, USCIS's application of the unlawful presence bar at 8 U.S.C. §

1182(a)(9)(B) is erroneous. USCIS incorrectly and unlawfully denied Mr. and Ms. Reis's

applications for naturalization by relying on this erroneous interpretation.

8

9

10

**COUNT III**
**Violation of Administrative Procedure Act**
**5 U.S.C. 706(2)(A)**
**(Retroactive Agency Action Not in Accordance with Law)**

11

12

59.     All the foregoing allegations are repeated and realleged as though fully set forth

herein.

13

14

15

60.     As explained above, USCIS's new, restrictive interpretation of the unlawful

presence bar at 8 U.S.C. § 1182(a)(9)(B) departs from its prior interpretation, which it applied at

the time Mr. and Ms. Reis were granted adjustment of status.

16

17

18

61.     Even if the statute is ambiguous, and even if this new interpretation is a reasonable

interpretation, USCIS further acted in violation of the law when it retroactively applied this new

interpretation to Mr. and Ms. Reis.

19

20

**COUNT IV**
**Violation of Administrative Procedure Act**
**5 U.S.C. 706(2)(A)**
**(Arbitrary and Capricious Agency Action)**

21

22

62.     All the foregoing allegations are repeated and realleged as though fully set forth

herein.

23

24

COMPL. & PET. FOR REVIEW OF DENIAL OF
NATURALIZATION APPLICATION - 13

63.     Under the APA, an agency must apply consistent adjudication standards to each application or case before it.

64.     USCIS has taken shifting and inconsistent positions to the unlawful presence bars at 8 U.S.C. § 1182(a)(9)(B) in letters and unpublished decisions. The agency's shifting and unpredictable approach to the bar leaves applicants without notice regarding the consequences of their decisions or without clear guidance regarding how to resolve them.

65.     As a result, USCIS's actions and denials of Mr. and Ms. Reis's applications are arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.   Assume jurisdiction over this matter;

b.   Review Plaintiffs' naturalization applications de novo and grant their applications;

c.   Declare that Defendants' new interpretation of 8 U.S.C. § 1182(a)(9)(B) is unlawful;

d.   Alternatively, declare that Defendants' new interpretation of 8 U.S.C. § 1182(a)(9)(B) may not be retroactively applied to Mr. and Ms. Reis;

e.   Award Plaintiffs' counsel reasonable attorneys' fees under the Equal Access to Justice Act, and any other applicable statute or regulation; and

f.   Grant such further relief as the Court deems just, equitable, and appropriate.

Respectfully submitted this 27th day of April, 2021,

s/ Bernardo Merino
Bernardo Merino (CA 225593)
Law Office of Bernardo Merino
233 Sansome Street, Suite 706
San Francisco, CA 94104
(415) 391-3001

Matt Adams (WA 28287)*
Aaron Korthuis (WA 53974)*
Margot Adams (WA 56573)*
NORTHWEST IMMIGRANT RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611

*Attorneys for Plaintiff-Petitioners*
* Application for admission *pro hac vice* forthcoming